STATE of Wisconsin, Plaintiff-Appellant-Cross-Respondent,

v.

James E. ERICKSON, Defendant-Respondent-Cross-Appellant.

Supreme Court

*No. 98–0273–CR. Oral argument April 13, 1999.—Decided July 8, 1999.*

(Also reported in 596 N.W.2d 749.)

759

For the plaintiff-appellant-cross respondent the cause was argued by *Paul Lundsten*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the defendant-respondent-cross appellant there was a brief and oral argument by *Glenn L. Cushing*, assistant state public defender.

¶ 1. ANN WALSH BRADLEY, J. This case is before the court on certification from the court of

appeals pursuant to Wis. Stat. § 809.61 (1997–98).[1] The circuit court concluded that the defendant, James E. Erickson, was entitled to a new trial under *State v. Ramos*, 211 Wis. 2d 12, 564 N.W.2d 328 (1997), because he did not receive the correct number of peremptory challenges during jury selection.[2] The State argues that because Erickson's attorney did not object to the number of peremptory challenges, this case is properly analyzed under the ineffective assistance of counsel standard rather than the automatic reversal standard of *Ramos*. We agree. Further, because we decline to presume prejudice every time there is a denial of an equal number of peremptory strikes to both the defense and the prosecution and because Erickson did not show actual prejudice, the ineffective assistance of counsel claim must fail.

¶ 2. Erickson also argues that the circuit court erred in refusing to strike a prospective juror for cause. He contends he needed to expend one of his peremptory challenges to correct the circuit court's error, an act entitling him to a new trial under *Ramos*. Because a review of the record indicates that the circuit court was well within its discretion in refusing to strike that juror for cause and in light of the defendant's failure to demonstrate ineffective assistance of counsel, we reverse the decision of the circuit court and remand the cause to that court with instructions to reinstate Erickson's conviction.

¶ 3. The facts are neither disputed nor extensive. Erickson was charged with one count of second degree sexual assault of a child contrary to Wis. Stat.

---

[1] All further references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

[2] Circuit Court for Eau Claire County, Thomas H. Barland, Judge.

§ 948.02(2) and one count of child enticement contrary to § 948.07(1). He had previously been convicted twice of second degree sexual assault of a child.

¶ 4. The court began jury selection with 21 prospective jurors in the panel and indicated that from that panel twelve jurors and an alternate would hear the case. In addition, the court indicated that whenever a juror from the panel was struck for cause, that stricken juror would be replaced by another prospective juror. The State and the defense were each granted four peremptory strikes which, when exercised, reduced the panel to its final size.

¶ 5. Four peremptory strikes, however, was not the correct number. Because Erickson had already been convicted of "serious child sex offense[s]" under Wis. Stat. § 939.62(2m), a conviction on either of the two charges in this case would automatically subject him to life in prison without the possibility of parole. Wis. Stat. § 939.62(2m)(b). As a result of this potential penalty, the State and Erickson should have each received an additional two strikes. Wis. Stat. § 972.03. Further, because the court included a thirteenth juror the State and Erickson should have each been granted an additional strike. *Id.* Thus under the statutes, both the State and Erickson should have had a total of seven peremptory challenges rather than the four the court granted them. This error went unnoticed by the circuit court, by the State, and by Erickson's attorney.

¶ 6. During voir dire one of the prospective jurors, Juror L, indicated that she had experienced sexual abuse. When questioned individually, Juror L revealed that at the age of twelve she was fondled by a contractor working at her family's home. When the circuit court asked whether she would give the victim's testimony any more weight because of her experience,

Juror L responded, "No, I don't think so."[3] When the circuit court asked if she could be fair and impartial, Juror L responded, "I think so."[4]

¶ 7. Based on her responses in the individual voir dire, Erickson sought to have Juror L struck for cause. The circuit court refused, concluding that Juror L could be a fair and impartial juror. The court opined that her assault had occurred nearly forty years ago, that she spoke of the assault calmly and without emotion, and that her assault occurred under notably different circumstances than those at issue in this case.[5]

---

[3] That portion of the voir dire transcript is as follows:

THE COURT: Now, would that experience that you had when you were that age make it difficult for you to be fair and impartial in this case?

JUROR L: I'm not sure. It's really hard to tell.

THE COURT: I suppose it depends upon what evidence there is.

JUROR L: True. It's been a long time ago, but it's something I never forgot.

THE COURT: Yes. It often happens in cases of this nature that it's one person's word against the other, and so you have to judge which one is telling the truth. Would you tend to favor the child's story simply because of what you underwent?

JUROR L: No, I don't think so. I think I could—

[4] That portion of the voir dire transcript is as follows:

THE COURT: If you're selected to sit on this jury, we'll have all of those of you selected to raise your hands and give an oath that you will be fair and impartial and you'll follow the instructions of law. If you were asked to undertake that oath, would you be able to carry out that oath?

JUROR L: I think so.

[5] The circuit court stated:

Well, [Juror L] is well into her 60's. The event took place when she was about 12 years of age. She talked about it without showing any emotion. She was open and seemed to be free of stress in discussing

¶ 8. In light of the circuit court's ruling, Erickson used one of his peremptory strikes to remove Juror L. In the end, the parties each exhausted their four peremptory strikes and it is undisputed that an impartial jury of thirteen members was impaneled.

¶ 9. At the conclusion of the trial, the jury acquitted Erickson on the second degree sexual assault charge but found him guilty of child enticement. Consistent with Wis. Stat. § 939.62(2m)(b), the court sentenced Erickson to life in prison without the possibility of parole.

¶ 10. Erickson sought post-conviction relief, arguing that because he received fewer peremptory strikes than were provided under the statute he was entitled to a new trial as a matter of law under *Ramos*. As a second ground for relief, Erickson argued that to the extent that the circuit court's error had not been preserved for appeal with a timely objection, it constituted ineffective assistance of counsel under the federal and state constitutions.

¶ 11. At the post-conviction hearing, Erickson's trial attorney indicated that he was genuinely unaware that Erickson was entitled to seven peremptory strikes under the law. He further stated that if he had been given the additional strikes, he would have used them all. Specifically, Erickson's trial attorney identified a particular juror who, although there was no basis to remove for cause, was someone that he had identified as a person likely to be sympathetic to the State's case.

---

it. Her explanation that she didn't report it because she was ashamed is I think a very natural reaction. There [have] been considerable writings in the press that the average person is likely to read which report similar reactions from victims. Her contact was sudden and forced upon her and of a sexual contact nature, a brief encounter, wholly different from what would be presented here. I'm satisfied that she can act fairly and impartially.

Due to the erroneous number of strikes, that juror remained on the jury and was chosen as the jury's foreperson.

¶ 12. In rendering its decision, the circuit court concluded that Erickson had been denied the effective assistance of counsel. Noting that peremptory challenges are "one of the most important rights belonging to an accused," the circuit court reasoned that prejudice to the defendant was to be presumed. As a result, although Erickson did not timely object to the error and was judged guilty by a fair and impartial jury, the circuit court determined that the reasoning in *Ramos* led to the conclusion that prejudice from deficient performance of trial counsel must be presumed and that Erickson was entitled to a new trial. The State appealed the automatic reversal, and Erickson cross-appealed the circuit court's failure to remove Juror L for cause. The court of appeals certified the appeal to this court.[6]

## I.

¶ 13. We address first whether this case should be analyzed under the automatic reversal standard of *Ramos* or under the ineffective assistance of counsel standard of *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Erickson urges this court to disregard the fact that his trial attorney failed to object to the circuit court's error in awarding peremptory strikes. He asks us to decide the case on its merits, which means ascertaining whether the circuit court's denial of the additional peremptory strikes mandates automatic

[6] The court of appeals certified the appeal for this court "to determine whether prejudice should be presumed when the trial court fails to grant the parties all of the peremptory strikes allowed under § 972.03 Stats., and trial counsel fails to object."

reversal under *Ramos*. Noting that the waiver rule is one of judicial administration rather than jurisdiction, Erickson initially urges this court to ignore the waiver because the importance of this case warrants a decision on its merits. *Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980). However, Erickson also concedes that this case can properly be analyzed under an ineffective assistance of counsel claim.

¶ 14. We are well aware that the waiver rule is one of judicial administration and that appellate courts have authority to ignore the waiver. However, the normal procedure in criminal cases is to address waiver within the rubric of the ineffective assistance of counsel. *See, e.g., Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986); *Lockhart v. Fretwell*, 506 U.S. 364, 380 n.6 (1993) (Stevens, J., dissenting); *State v. Smith*, 207 Wis. 2d 258, 273, 558 N.W.2d 379 (1997) (failure to object to prosecutor's breach of plea agreement); *State v. Vinson*, 183 Wis. 2d 297, 306–07, 515 N.W.2d 314 (Ct. App. 1994) (failure to object to witness' improper testimony about the credibility of another witness).

¶ 15. The waiver rule exists to cultivate timely objections. Such objections promote both efficiency and fairness. By objecting, "both parties and courts have notice of the disputed issues as well as a fair opportunity to prepare and address them in a way that most efficiently uses judicial resources." *State v. Agnello*, 226 Wis. 2d 164, 173, 593 N.W.2d 427 (1999). If the waiver rule did not exist, a party could decline to object for strategic reasons and raise the error only when that party needed an advantage at some point in the trial. Similarly, judicial resources, not to mention the resources of the parties, are not best used to correct errors on appeal that could have been addressed during the trial. *State v. Corey J.G.*, 215 Wis. 2d 395, 405, 572

N.W.2d 845 (1998); *State v. Caban*, 210 Wis. 2d 597, 604–05, 563 N.W.2d 501 (1997).

¶ 16. In *Ramos*, the error was brought to the circuit court's attention when the defendant objected to the court's refusal to remove a particular juror for cause. *Ramos*, 211 Wis. 2d at 14–15. As a result, the circuit court was made aware of its error and had the opportunity to correct it. The case only reached this court because the circuit court declined the opportunity to correct the error.

¶ 17. In light of these considerations, we will not directly consider the effect of the circuit court's error in light of *Ramos*. That is to say, we decline to approach this case as if Erickson had properly preserved his loss of peremptory strikes with an objection at the time of the circuit court's error.

¶ 18. The court of appeals recognized such an approach in *State v. Damaske*, 212 Wis. 2d 169, 200–01, 567 N.W.2d 905 (Ct. App. 1997). It noted that waiver may be enforced even where the error, if preserved, could entitle the defendant to a new trial. In *Damaske*, the defendant neglected to request a substitution from a particular judge. *Id.* at 197.

¶ 19. The denial of a timely-filed substitution request, much like the denial of a peremptory strike, is grounds for automatic reversal. *See County of Vilas v. Danber*, 106 Wis. 2d 438, 439, 316 N.W.2d 346 (1982) (per curiam); *State v. Holmes*, 106 Wis. 2d 31, 315 N.W.2d 703 (1982). Nevertheless, the court of appeals concluded that "there is a significant distinction between the consequences on appeal of a trial-court error and the consequences of that same error when it is raised in an ineffective-assistance-of-counsel con-

text." *Damaske*, 212 Wis. 2d at 200 (referencing *Kimmelman v. Morrison*, 477 U.S. 365 (1986)).

¶ 20. The fact that a preserved error could lead to automatic reversal does not necessarily mean that the same result need be reached when that error is waived. Like the court in *Damaske*, we decline to ignore Erickson's waiver. As is normally done in criminal cases, we will analyze the waiver within the ineffective assistance of counsel framework.

## II.

¶ 21. Appellate review of an ineffective assistance of counsel claim is a mixed question of fact and law. *State ex rel. Flores v. State*, 183 Wis. 2d 587, 609, 516 N.W.2d 362 (1994); *State v. Pitsch*, 124 Wis. 2d 628, 633–34, 369 N.W.2d 711 (1985). We will not disturb the circuit court's findings of fact unless they are clearly erroneous. However, the ultimate determination of whether the attorney's performance falls below the constitutional minimum is a question of law which this court reviews independently of the legal determinations rendered by the circuit court. *Pitsch*, 124 Wis. 2d at 634.

¶ 22. This state, borrowing from the United States Supreme Court, employs a two-pronged inquiry for an ineffective assistance of counsel claim. To find success, a defendant must show both (1) that his counsel's representation was deficient and (2) that this deficiency prejudiced him so that there is a "probability sufficient to undermine the confidence in the outcome" of the case. *Strickland*, 466 U.S. at 694; *State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990).

768

■■■■■■■■■■■

■

¶ 23. In this case, the truly contested prong of *Strickland* is the second—whether any error on the part of Erickson's attorney caused Erickson prejudice.[7] Prejudice occurs where the attorney's error is of such magnitude that there is a reasonable probability that, absent the error, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Johnson*, 153 Wis. 2d at 129.

A.

¶ 24. Erickson urges this court to follow the lead of the circuit court and to presume prejudice every time there is a denial of equal numbers of peremptory strikes to both the defense and the prosecution. He

---

[7] In its brief to this court, the State contends that Erickson's trial attorney did not perform deficiently. The State argues that this case is not unique in its facts. Noting that at least six other Wisconsin cases are currently pending involving waived peremptory strike error, the State posits that such a number indicates widespread confusion in this area of the law. Thus, the State maintains, the sheer number of nearly identical cases indicates that Erickson's trial counsel did not provide legal services "outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. 668, 690 (1984).

The State's position in this court is a 180-degree turnaround from its position below, where it quite readily conceded deficient performance. Because we conclude that Erickson cannot show any prejudice from his trial attorney's error, we do not need to decide whether the State's "switch in time" is permissible, *State v. Van Camp*, 213 Wis. 2d 131, 144, 569 N.W.2d 577 (1997), and whether Erickson's trial counsel performed deficiently. *Strickland*, 466 U.S. at 697 (courts need not address both prongs when defendant makes insufficient showing on one); *State v. O'Brien*, 223 Wis. 2d 303, 324, 588 N.W.2d 8 (1999).

notes that this court's decision in *Ramos* indicated that, when preserved for appeal, a defendant's right to effectively exercise all of his peremptory strikes was so important that a denial of even one strike entitled a defendant to a new trial without a showing of actual prejudice. He argues that if actual prejudice need not be shown where the error is preserved for appeal, actual prejudice ought to be presumed where the error is not preserved for appeal. We disagree.

¶ 25. To be sure, there are instances where a court will presume prejudice; those instances, however, are rare. In one category of cases, prejudice has been presumed when the effective assistance of counsel has been eviscerated by forces unrelated to the actual performance of the defendant's attorney. In such cases the inquiry is not on the conduct of the defendant's counsel but on the environment in which the judicial proceeding occurs. For example, courts have presumed prejudice when a defendant was denied counsel altogether at critical stages of the adjudicative process. *See, e.g., Geders v. United States*, 425 U.S. 80 (1976); *White v. Maryland*, 373 U.S. 59, 60 (1963) (per curiam); *State v. Behnke*, 155 Wis. 2d 796, 805–06, 456 N.W.2d 610 (1990).

¶ 26. Similarly, prejudice has been presumed when, although the defendant is actually given counsel, "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate." *United States v. Cronic*, 466 U.S. 648, 659–60 (1984) (citing *Powell v. Alabama*, 287 U.S. 45 (1932)). These cases involve actions by the court as well as actions by the prosecutor. *Herring v. New York*, 422 U.S. 853, 864 (1975) (denial of a defendant's right to make a closing argument at the conclusion of a trial); *Penson v. Ohio*,

488 U.S. 75, 88 (1988) (denial of the right to counsel in non-frivolous appeal); *Smith*, 207 Wis. 2d at 280–81; *see also State v. Pultz*, 206 Wis. 2d 112, 131–32, 556 N.W.2d 708 (1996) (declaration of defendant's indigency).

¶ 27. In other, more limited, circumstances the actual assistance rendered by a particular attorney has been deemed so outside the bounds necessary for effective counsel that a court has presumed prejudice. In these cases, the conduct of the particular attorney, rather than the environment of the proceeding, has been the focus of the inquiry. For example, where an attorney has labored on behalf of a defendant while harboring a conflict of interest, prejudice is automatic. *Cuyler v. Sullivan*, 446 U.S. 335, 349–50 (1980); *State v. Kaye*, 106 Wis. 2d 1, 8–16, 315 N.W.2d 337 (1982). In similar vein, courts have presumed prejudice when an attorney fails to present known evidence to the court calling into question the defendant's competency to stand trial. *State v. [Oliver Ross] Johnson*, 133 Wis. 2d 207, 223–24, 395 N.W.2d 176 (1986).

¶ 28. This particular case presents none of these scenarios. We are mindful that "the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *Cronic*, 466 U.S. at 658. With this underlying purpose in mind, we are persuaded that prejudice need not be presumed in this case.

¶ 29. There is little doubt that Erickson was judged by an impartial jury; even he admits as much. This fact alone distinguishes the present case from many of those in which prejudice was presumed. It is difficult to believe that defendants would make this same concession were they denied counsel at a hearing

in which they enter a plea, *White*, 373 U.S. at 60, or were they denied the opportunity to offer a summation, *Herring*, 422 U.S. at 864, or were they required to stand trial even though they may well lack competency to do so, *[Oliver Ross] Johnson*, 133 Wis. 2d at 223–24.

■

¶ 30. This case is also to be distinguished from *Ramos* as that defendant, unlike Erickson, in effect not only received fewer peremptory strikes than provided for by statute, but also received fewer strikes than did the prosecutor. Here both sides were equally affected by the oversight. The error in this case did not lead to an "unlevel playing field." Not only do the parties concede that the jury was fair and impartial, but they acknowledge that both sides equally lost out on the use of peremptory strikes. Under these circumstances we decline Erickson's invitation to presume prejudice every time the defendant does not get the number of peremptory strikes allowed by statute but the State and the defendant get an equal number of peremptory strikes.

¶ 31. Yet again this court is called upon to interpret our decision in *Ramos* and encouraged to expand its reach. We will not do so. As we concluded in *State v. Mendoza*, 227 Wis. 2d 838, 860–61, 596 N.W.2d 736 (1999), *Ramos* does not entitle a defendant to a new trial if the circuit court erroneously removes jurors for cause. As we conclude in this case, *Ramos* does not entitle a defendant to a new trial when both the State and the defense are given an equal number of peremptory strikes, even if the number is less than provided for in the statute. Simply stated, *Ramos* entitles a defendant to automatic reversal only in limited circumstances: a circuit court, after the defendant has challenged a juror for cause, incorrectly concludes that

the juror does not need to be removed for cause. Under such a fact scenario, the defendant uses peremptory strikes to correct a circuit court error, effectively receiving fewer strikes than provided for in the statute and receiving fewer strikes than received by the State. *Ramos* stands for nothing more and we decline to expand its reach beyond those facts.

### B.

¶ 32. Absent a presumption of prejudice, Erickson must make a showing of actual prejudice. It is not enough for a defendant to merely show that the error "had some conceivable effect on the outcome" of the trial. *Strickland*, 466 U.S. at 693. Rather, the defendant must demonstrate that but for his trial attorney's error there is a reasonable probability—a "probability sufficient to undermine confidence in the outcome"—that the result of his trial would have been different. *Id.* at 694; *Johnson*, 153 Wis. 2d at 129.

¶ 33. Because he is challenging the validity of his conviction, Erickson must show that "absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. To determine whether Erickson has satisfactorily made his required showing, a court looks to the totality of the evidence in the case. *Johnson*, 153 Wis. 2d at 129–30.

¶ 34. Erickson candidly admitted at oral argument that meeting his required burden to show actual prejudice is very difficult in this case. Had the circuit court granted the correct number of peremptory strikes, such action would not have affected only Erickson. It would also have affected the State and the voir dire proceeding as a whole. Wisconsin law grants both the plaintiff and the defendant the same number of strikes. Wis. Stat. § 972.03. Thus, any benefit Erickson

would have realized from three additional strikes may have been offset by the three additional strikes given to the State.

¶ 35. Aside from Erickson having his additional strikes offset by those granted to the State, under the jury selection system employed by the circuit court, the panel of prospective jurors would have also been enlarged by six persons. We can only speculate the effect that the additional six persons, coupled with the six additional peremptory strikes, would have had on the ultimate composition of the jury.

■

¶ 36. In the end, we can do no better than speculate on what would have been the result of his trial had the circuit court not erred, which is also the best that Erickson can offer. That is not enough, for *Strickland* and *Johnson* require that Erickson offer more than rank speculation to satisfy the prejudice prong. Because he failed to do so, he has suffered no prejudice from his trial attorney's error and we deny his ineffective assistance of counsel claim.

### III.

¶ 37. Erickson's final hope for the reversal of his conviction and the receipt of a new trial rests in his argument that the circuit court erred in not striking Juror L for cause. He contends that Juror L's bias was manifest and that the circuit court's purported error required him to use a peremptory strike to remove her from the panel in violation of *State v. Ferron*, 219 Wis. 2d 481, 579 N.W.2d 661 (1998).

¶ 38. ꞏ The resolution of this issue depends upon the answer to one question: did the circuit court err when it declined to strike Juror L for cause? A review of

the record reveals that it did not and Erickson's claim to the contrary must be rejected.

¶ 39. The decision of whether a prospective juror is biased and should be struck from the panel for cause is a matter largely left to the circuit court's discretion. *State v. Gesch*, 167 Wis. 2d 660, 666, 482 N.W.2d 99 (1992). That court, being able to fully observe the prospective juror during voir dire, is in a far superior position to ascertain bias than is an appellate court whose only link to the voir dire is through the "bare words on a transcript" of the proceedings. *Ferron*, 219 Wis. 2d at 508 (Geske, J., dissenting). This court will not substitute its judgment for that of the circuit court so long as the circuit court's decision does not extend beyond the boundaries set by the law. *Gesch*, 167 Wis. 2d at 666. As a result, on review we will uphold the discretion of the circuit court unless it is shown to be an erroneous exercise of discretion. *State v. Delgado*, 223 Wis. 2d 270, 280–81, 588 N.W.2d 1 (1999).

¶ 40. In *Ferron*, 219 Wis. 2d at 492–93, we reiterated that a juror must be struck for cause if a review of the record reveals that a juror exhibits bias. Bias can exist in various forms: (1) when a prospective juror subjectively is unable or unwilling to judge the case in a fair and impartial manner; or (2) when a reasonable person in the prospective juror's position objectively could not judge the case in a fair and impartial manner.[8] *State v. Faucher*, 227 Wis. 2d 700, 717–19, 596 N.W.2d 770 (1999); *Ferron*, 219 Wis. 2d at 498.

---

[8] Bias can also exist by way of statute. Wis. Stat. § 805.08. In these limited cases, a court is not interested in determining whether a particular juror in an individual case exhibits bias. Instead, those persons are legally biased because the legislature

775

¶ 41. Erickson argues that Juror L exhibited both types of bias. First, he concludes that she should have been struck for cause because her answers on voir dire demonstrate her subjective inability to commit to impartiality. Second, he posits that her experience of being sexually assaulted as a child makes her objectively unable to be impartial. We disagree.

¶ 42. Addressing Erickson's first argument, we reiterate what we said in *Ferron*, 219 Wis. 2d at 502 n.9: a prospective juror need not respond to voir dire questions with unequivocal declarations of impartiality. Indeed, we expect a circuit court to use voir dire to explore a prospective juror's fears, biases, and predilections and fully expect a juror's honest answers at times to be less than unequivocal. *Id.* at 507 (Geske, J., dissenting).

¶ 43. Erickson seizes largely on Juror L's answer of "I think so" to the circuit court's question of whether she would be able to fairly and impartially weigh the evidence. As the State noted at oral argument, the transcript cannot reveal Juror L's inflections when she stated those words. She may have stated them with timidity or she may have stated them with earnestness. An appellate court cannot know which is the more apt description.

¶ 44. However, a circuit court can. This circuit court concluded that Juror L spoke of her assault without emotion and free of stress. We can find no reason to question either the circuit court's detailed findings on

has concluded that such persons are so "inherently prone to partiality that an individual case-by-case inquiry is not worth the time or effort." *State v. Kiernan*, 227 Wis. 2d 736, 744, 596 N.W.2d 760 (1999). There is no suggestion of statutory bias in this case.

this matter or its conclusion that Juror L could be a fair and impartial juror.

¶ 45. Likewise, we find no merit to Erickson's second assertion that because of Juror L's own sexual assault, a reasonable person in her position could not be fair and impartial. Erickson's assertion comes close to arguing that any victim of sexual assault, at least if the assault occurred while the victim was a child, must be categorically excluded from serving on his jury. We have been "repeatedly reluctant to exclude groups of persons from serving as petit jurors as a matter of law." *State v. Louis*, 156 Wis. 2d 470, 479, 457 N.W.2d 484 (1990) (collecting cases).

¶ 46. We remain reluctant. Nothing in the voir dire transcript or circuit court's findings would suggest that Juror L was anything other than a person both willing and able to act as an impartial juror. Accordingly, the circuit court was well within its discretion when it refused to strike Juror L for cause and Erickson was not forced to expend a peremptory strike to correct the circuit court's error.

¶ 47. In sum, we conclude that in light of the failure of Erickson's attorney to object and preserve for appeal the deprivation of three peremptory strikes, the proper framework for analyzing his claim is that of ineffective assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, a defendant must establish prejudice. Since we decline to presume prejudice where there is a denial of an equal number of peremptory strikes to both the defense and the prosecution and since Erickson has failed to show actual prejudice, the claim for ineffective assistance of counsel must fail.

¶ 48. Additionally, Erickson's claim of automatic reversal under *Ramos* fails because a review of the record illustrates that the circuit court did not erroneously exercise its discretion when it refused to strike Juror L for cause. Accordingly, we reverse the decision of the circuit court and remand the cause to that court with instructions to reinstate Erickson's conviction.

*By the Court.*—The decision of the circuit court is reversed and the cause remanded.