**COURT OF APPEALS
DECISION
DATED AND FILED**

**October 26, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1927-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2016CF51

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ROBERT A. OSOWSKI,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Ozaukee County: STEVEN MICHAEL CAIN, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Robert A. Osowski appeals from a judgment and an order of the circuit court, contending his counsel afforded him ineffective assistance related to the hearing on his motion to suppress evidence. For the following reasons, we affirm.

## Background

¶2 M.B. and S.B. reported a burglary at their home. Law enforcement came to suspect Osowski as the perpetrator and made contact with his former girlfriend, who utilized her iPhone's "find my iPhone" feature to locate Osowski for the police. This was possible because Osowski was in possession of an old iPhone that his former girlfriend had allowed him to use and that was still on her cellphone account. When located by police, Osowski was in possession of items that had been stolen from M.B. and S.B.'s home; at the police station later that day, he also made incriminating statements to the police. He was charged with burglary of a dwelling, theft, and criminal damage to property, all as a repeater, and subsequently moved to suppress key physical evidence and incriminating statements on the ground that law enforcement violated his Fourth Amendment rights in the manner in which it located him, leading to the discovery of the evidence and his statements.

¶3 An evidentiary hearing was held on Osowski's motion, after which the circuit court denied the motion on the basis that Osowski did not have a reasonable expectation of privacy "in the use of that [feature] to locate him in light of the testimony that we heard primarily from" Osowski's former girlfriend. This ruling was based on the court's findings, supported by the former girlfriend's testimony at the hearing that: (1) she had upgraded her cellphone and then allowed Osowski to use her old iPhone 4; (2) she went to the AT&T store with

him to get the phone hooked up for him to use; (3) a new phone number was assigned to the phone "but the billing remained under her name" and the phone "remained her phone on her account"; (4) the phone was never gifted to Osowski "or [in] any way transferred" to him; (5) she "had [previously] attempted to use the find my iPhone [feature] to locate Mr. Osowski," found that the feature had been turned off, had a discussion with him "that she was not going to continue to pay for the service or allow him to use the phone if that particular feature was turned off[,] … [a]nd then lo and behold that feature was turned back on"; (6) she had used the "find my iPhone" feature "one or two times to locate [Osowski] after it had been turned back on"; and (7) Osowski "was aware that she had the ability to use that feature." The court added:

> [T]he phone was not Mr. Osowski's property. The phone number was linked to [the former girlfriend's] account. Although in his mind it may have been his phone number to reach him, it was not. It was linked to her account. She paid for the service. Mr. Osowski gave the login information to [her] to be used, and he knew she had access to that information, and he certainly did not have dominion and control over that device in light of the fact that she could, one, access his location, and two, based on the fact that it was on her account had the ability to shut it down at any point.

¶4      Osowski eventually pled guilty to the burglary charge and the other two charges were dismissed. Following his sentencing, Osowski filed the postconviction motion that underlies this appeal, contending his trial counsel performed ineffectively by not calling him to testify at the suppression hearing. At the postconviction hearing that followed, both Osowski and his trial counsel testified.

¶5      Osowski's trial counsel testified that prior to the suppression hearing, he and Osowski had discussed "how he thought [his former girlfriend]

may have gotten" his cellphone-related information that allowed her to track him from her phone. Counsel agreed that prior to that hearing, he also had discussed with Osowski and explored issues related to the "password[/login information] that was given on that cellphone" and "the consent given on that password[/login information]." When then asked whether Osowski "could have been able to contradict the testimony of his girlfriend" at the suppression hearing, counsel responded, "[N]ot based on the information that I had." Counsel expounded: "I think the specific issue was how the girlfriend found, you know, this login information. I believe she testified at the hearing that she obtained the information essentially because she was at the AT&T store when the phone was switched over.… That was consistent with what I understood the situation to be." When asked, "And through your discussions with Mr. Osowski do you think that there's a possibility that he would have contradicted her testimony had he testified," counsel responded: "No. I don't believe so." When asked, "Do you think that the outcome of the suppression motion could have had a different result if the defendant were allowed to testify," counsel responded, "I don't believe so."

¶6 Counsel further testified that after Osowski's former girlfriend testified at the suppression hearing, counsel and Osowski "took a moment or two" to discuss whether Osowski should testify. When asked why he did not call Osowski to the stand to testify, counsel stated:

> W[ith] the issue of the obtaining the login information and the password, my recollection of my understanding of that going into [the suppression] hearing was that she obtained that simply by being kind of in the proximity of the iPhone being turned on … with his number. It was not that … he had provided it to her. But that she was there when it happened. So when she testified essentially in line with I think what I had put in my motion that she had gotten the information by being in the area, that was what I understood to be the situation. That that's how she got that information. It was not provided by Mr. Osowski for the

purposes of her using it in any way. She got it either by overhearing it or just kind of being there when it was put in place.

¶7      On cross-examination, counsel indicated that as he prepared for the suppression motion hearing, it was his understanding that the former girlfriend owned the iPhone that she allowed Osowski to use and that she continued to pay the bill for it. He again acknowledged that from his discussions with Osowski leading into that hearing, it was his understanding that the former girlfriend became aware of the information for the iPhone Osowski used because she was present at the store when the phone was set up for his use and she either heard the information going back and forth between Osowski and the store clerk or was there next to him and witnessed him logging in to complete the set-up process. Counsel also acknowledged that he had discussed with Osowski the former girlfriend's ability to track him and further acknowledged Osowski knew she was able to do that and nonetheless "continued to use the phone." Counsel was also asked if, based upon his discussions with Osowski related to the suppression hearing, Osowski "was comfortable not testifying," and counsel responded, "I believe so, yes."

¶8      On redirect examination, counsel testified that he was satisfied with the former girlfriend's testimony at the hearing because "she didn't indicate that Mr. Osowski had given her permission for any of these things. She had simply obtained the information by kind of being near the information when it was provided to the AT&T people."

¶9      Osowski also testified at the postconviction hearing. He indicated he and counsel spoke in advance of and at the suppression hearing regarding whether he would testify, he informed counsel he wanted to testify, and it was his belief

following these discussions that he would. He indicated he informed counsel during the suppression hearing that his former girlfriend had lied in her testimony and he wanted to testify. He stated that if he had been called as a witness at the suppression hearing, he would have testified that: (1) his girlfriend gave him the iPhone, so he was its owner; (2) he never gave her his information related to the iPhone and did not know how she got it but "thought, you know, she worked at AT&T [and] had a way to find a lost or stolen phone"; (3) he never gave her permission to use the information and was not aware she was using it to locate him; and (4) he selected the phone number for the iPhone.

¶10 On cross-examination, Osowski admitted he had twenty-one prior criminal convictions and if he had testified at the suppression motion hearing, that fact could have been introduced to raise questions as to his character and credibility. He also testified that while the phone was on his former girlfriend's account and she paid the bill, he "had an agreement with her to pay her $25 a month." He acknowledged the police gave the phone back to his former girlfriend after it had been confiscated from him and stated she "gave it to her neighbor's son or something like that." Osowski admitted that prior to his arrest in this case, he was aware she had tracked him with the phone, and when he turned off that tracking feature, "[s]he called probably ten minutes later and … told me to turn the locator on or she was going to shut the phone off."

¶11 The circuit court denied Osowski's postconviction motion, concluding trial counsel did not perform ineffectively. The court indicated that based upon the testimony presented at the postconviction hearing, the court still stood by its suppression-motion ruling "as to the contents of the phone and the right to privacy issue, the ownership of the phone, the control of the phone and the like." The court found Osowski's postconviction testimony "self-serving" and

6

trial counsel's testimony credible and "more clear as to the facts leading up [to] or during that [suppression] motion hearing." Referring to counsel's testimony, the court specifically found that counsel and Osowski had discussed the strategy regarding whether Osowski would testify at the suppression hearing and that "*they* didn't believe the outcome would be affected by the decision not to testify, because [counsel] didn't believe that Mr. Osowski would testify differently" than his former girlfriend. (Emphasis added.) Osowski appeals the court's denial of his postconviction motion.

## *Discussion*

¶12　Osowski asserts counsel afforded him ineffective assistance in relation to the suppression motion, and that the circuit court erred in concluding otherwise, because counsel "failed to call him as a rebuttal witness" at the suppression hearing. We conclude counsel was not ineffective.

¶13　To succeed on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. *State v. Erickson*, 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999). To prove deficient performance, the defendant must show that counsel's specific acts or omissions were "outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). There is a strong presumption that a defendant received adequate assistance and that counsel's decisions were justified in the exercise of reasonable professional judgment. *State v. Domke*, 2011 WI 95, ¶36, 337 Wis. 2d 268, 805 N.W.2d 364; *State v. Kimbrough*, 2001 WI App 138, ¶¶31-35, 246 Wis. 2d 648, 630 N.W.2d 752. "Reviewing courts should be 'highly deferential' to counsel's strategic decisions and make 'every effort ... to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" ***Domke***, 337 Wis. 2d 268, ¶36 (citation omitted). Counsel's performance is deficient only if the defendant proves that counsel's challenged acts or omissions were objectively unreasonable under all the circumstances of the case. ***Kimbrough***, 246 Wis. 2d 648, ¶35. To prove prejudice, the defendant must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. ***Strickland***, 466 U.S. at 694. If the defendant fails to prove one prong, we need not address the other. *See **id.*** at 697. We conclude Osowski has not shown that counsel performed deficiently by failing to call him as a witness.

¶14 At the postconviction hearing, counsel testified that prior to the suppression hearing, he and Osowski discussed the possibility of Osowski testifying at that hearing. After hearing the testimony of Osowski's former girlfriend, he and Osowski again discussed whether Osowski should testify. Counsel indicated that following that discussion, Osowski "was comfortable not testifying." Counsel further testified that he did not call Osowski as a witness because based upon his discussions with Osowski at the time, counsel didn't "believe [Mr. Osowski] would have contradicted" his former girlfriend's testimony. While Osowski's postconviction testimony differed from counsel's on several points, the circuit court found Osowski's testimony self-serving and counsel's testimony credible and "more clear as to the facts leading up [to] or during that [suppression] motion hearing." Because the court's credibility determination is not clearly erroneous, we uphold it. *See **Domke***, 337 Wis. 2d 268, ¶58. Additionally, the court specifically found that counsel and Osowski discussed the strategy regarding whether Osowski would testify at the suppression hearing and that "*they* didn't believe the outcome would be affected by the

decision not to testify, because [counsel] didn't believe that Mr. Osowski would testify differently" than his former girlfriend. (Emphasis added.) Thus, the court found it was a joint decision by counsel and Osowski that Osowski not testify, and that finding is supported by the reasonable inferences from counsel's credible testimony. *See State v. Breitzman*, 2017 WI 100, ¶71, 378 Wis. 2d 431, 904 N.W.2d 93 (concluding that defendant failed to demonstrate deficient performance where strategy pursued by counsel was "rationally based on counsel's discussions" with defendant). Furthermore, because Osowski gave counsel every reason to believe his testimony would not be helpful, counsel had no rational reason to call him as a witness. Osowski has not met his burden to show that the circuit court erred in concluding that counsel did not perform deficiently in making this strategic decision.[1]

> *By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)5. (2019-20).

---

[1] Osowski also claims the circuit court erred in denying his suppression motion because it "erroneously determined that [Osowski] had surrendered his expectation of privacy." We do not address this issue as Osowski fails to develop any arguments based upon legal authority from which we could conclude the court erred. *See Gaethke v. Pozder*, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381 ("[O]n appeal 'it is the burden of the appellant to demonstrate that the [circuit] court erred.'" (second alteration in original; citation omitted)); *ABKA Ltd. P'ship v. Board of Rev.*, 231 Wis. 2d 328, 349 n.9, 603 N.W.2d 217 (1999) (we do not address undeveloped arguments); *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (an appellate court may decline to review issues that are insufficiently briefed or unsupported by legal authority). More specifically, he develops no arguments supported by legal authority from which we could conclude that under the circumstances of this case he had a reasonable expectation of privacy related to the tracking of the phone or that law enforcement violated any such expectation of privacy.