COURT OF APPEALS
DECISION
DATED AND FILED

March 31, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1800-CR**

Cir. Ct. No. 2020CF3668

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DEMETRIUS RAPHAEL RAMOS,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: GLENN H. YAMAHIRO and MICHELLE A. HAVAS, Judges. *Affirmed*.

Before White, C.J., Donald, and Geenen, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1  PER CURIAM. Demetrius Raphael Ramos appeals from a judgment of conviction for first-degree intentional homicide with the use of a dangerous weapon and an order of the circuit court denying his postconviction motion.[1]  For the reasons set forth below, we affirm.

## BACKGROUND

¶2  In October 2020, Milwaukee Police officers responded to a shooting at a gas station where they discovered the victim, Germaine Reid, suffering from gunshot wounds.  Reid was pronounced dead at the scene.  Surveillance video from the gas station recovered during the ensuing police investigation first showed Ramos entering Reid's vehicle through the front passenger side door.  Shortly afterwards, the driver's side window shattered and movement can be seen inside the vehicle before Ramos exits, and leaves in a separate vehicle driven by Makaylee Reeber, the mother of Ramos' children.  Ramos was in Reid's vehicle with him for approximately 15 seconds.  Ramos was arrested and charged with first-degree intentional homicide with the use of a dangerous weapon.

¶3  The case proceeded to trial where the State presented surveillance footage of the shooting and testimony from ten witnesses.  The doctor who performed Reid's autopsy testified that Reid's cause of death was due to multiple gunshot wounds from at least three bullets but "could be as many as eight."

---

[1] The Honorable Glenn H. Yamahiro presided over Ramos' trial, imposed his sentence, and entered the resulting judgment of conviction.  The Honorable Michelle A. Havas entered the order denying Ramos' postconviction motion.  For ease of reference, we refer to both as the circuit court.

2

¶4      Reeber testified pursuant to an immunity agreement with the State for her role in aiding Ramos.  She testified that on the day of the shooting, she and Ramos were at the gas station and after he pumped the gas, he left their vehicle wearing a bag that contained multiple guns and entered another person's vehicle to buy marijuana.  Reeber stated that she heard "[l]ots of gunshots" and saw Ramos shoot Reid.  After Ramos returned to their vehicle, she observed him holding a bag of marijuana that he did not previously have and the tip of his finger was injured.  Reeber then quickly drove away with Ramos.

¶5      Ramos testified in his defense.  Contrary to Reeber's testimony, he explained that on the day of the shooting he "wanted to try to make a few extra bucks" by selling marijuana at the gas station, so he used a "hand signal" to indicate he was selling and Reid had gestured for Ramos to follow him to Reid's vehicle.  After Ramos entered Reid's vehicle, he placed his bag on his lap.  He stated that the bag contained only marijuana and a computer.  Ramos then noticed that Reid was pointing a handgun at him and had another handgun on his lap.  Reid told Ramos that if he ran, he would be shot.

¶6      Ramos explained that as Reid was rifling through Ramos' pockets and bag, Ramos was watching the firearm pointed at him.  When Ramos noticed the firearm start to lower, he "lunged for the gun" and "grabbed the nozzle-type part with both of [his] hands."  He felt pain coming from his finger and started screaming for help as he wrested control of the gun.  Ramos then saw Reid grab the other handgun off his lap and point it at him so Ramos fired at Reid.  After Ramos fired the second time, Reid "was like lunging at [him] with the gun" and Ramos fought him until he noticed Reid was no longer holding the gun.  Ramos testified that he did not remember how many times he fired at Reid and only shot him because he felt his life was in danger.

¶7 After the close of evidence, the State requested jury instructions on the lesser-included offense of first-degree reckless homicide and noted there was sufficient evidence to support instructing the jury on self-defense. Ramos' trial counsel agreed stating, "[WIS JI—CRIMINAL] 805 is the self-defense one I am seeking[.]" The State drafted jury instructions which included language about perfect self-defense from WIS JI—CRIMINAL 805.[2] Trial counsel reviewed the proposed jury instructions and stated, "they mirror the 805 language my client was requesting, so we have no objection."

¶8 The jury found Ramos guilty as charged, and the circuit court sentenced him to life in prison. Ramos then moved for postconviction relief arguing that trial counsel was ineffective for failing to request a jury instruction on imperfect self-defense and the lesser included offense of second-degree intentional homicide.

---

[2] The jury instructions provided, in relevant part:

> Self-defense is an issue with regard to the charge of first[-]degree intentional homicide. The law of self-defense allows the defendant to threaten or intentionally use force against another only if:
>
> the defendant believed that there was an actual or imminent unlawful interference with the defendant's person; and
>
> the defendant believed that the amount of force the defendant used or threatened to use was necessary to prevent or terminate the interference; and
>
> the defendant's beliefs were reasonable.
>
> The defendant may intentionally use force which is intended or likely to cause death or great bodily harm only if the defendant reasonably believed that the force used was necessary to prevent imminent death or great bodily harm to himself.

¶9 The circuit court denied his postconviction motion without a hearing, finding his allegations speculative and conclusory. The court explained that Ramos failed to show that he was prejudiced because he "ha[d] not demonstrated that there [was] a reasonable probability that but for counsel's decision not to request an imperfect self-defense instruction, the verdict would have been any different." Similarly, the court found that trial counsel's performance was not deficient because Ramos' "claim that the facts of this case might have allowed for an imperfect self-defense instruction is not enough to demonstrate that counsel's decision not to request one was objectively unreasonable according to prevailing professional norms[.]"

¶10 Ramos now appeals.

## DISCUSSION

¶11 On appeal Ramos argues the circuit court erred by denying his postconviction motion without a hearing and requests that we exercise our discretionary authority pursuant to WIS. STAT. § 752.35 (2023-24)[3] to remand for a new trial in the interests of justice. Ramos contends that trial counsel's failure to request a jury instruction on imperfect self-defense and the lesser included offense of second-degree intentional homicide warrants a new trial. We disagree, and conclude that the circuit court properly denied Ramos' motion.

¶12 There are two types of self-defense affirmative defenses: perfect and imperfect. *State v. Johnson*, 2021 WI 61, ¶19, 397 Wis. 2d 633, 961 N.W.2d 18; *see* WIS. STAT. §§ 939.48(1), 940.01(2)(b). Perfect self-defense is a complete

---

[3] All references to the Wisconsin Statutes are to the 2023-24 version.

defense to a homicide charge whereas imperfect self-defense "reduces a charge of first-degree intentional homicide to second-degree intentional homicide[.]" *Johnson*, 397 Wis. 2d 633, ¶19.

¶13     In order to be entitled to a jury instruction on self-defense, the defendant must proffer some evidence to support that defense. *State v. Head*, 2002 WI 99, ¶¶111-12, 255 Wis. 2d 194, 648 N.W.2d 413.  Perfect self-defense is applicable when the defendant reasonably believed the force he or she used against the victim was necessary to prevent the threat of imminent death or great bodily harm. *Id.*, ¶¶66, 70; *see* WIS JI—CRIMINAL 805.  Imperfect self-defense is relevant when the defendant actually believed, regardless of whether that belief was reasonable, that he or she used force to defend themselves from the threat of imminent death or great bodily harm but the amount of force used was unnecessary under the circumstances. *Head*, 255 Wis. 2d 194, ¶¶69-70; *see* WIS JI—CRIMINAL 1016.

### I.     The circuit court properly exercised its discretion.

¶14     A defendant is entitled to a hearing on a postconviction motion when "the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief." *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.  "If the motion does not raise facts sufficient to entitle the defendant to relief, or if it presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *State v. Ruffin*, 2022 WI 34, ¶28, 401 Wis. 2d 619, 974 N.W.2d 432.

¶15     We review the circuit court's grant or denial of a hearing for an erroneous exercise of discretion. *Id.*  "A circuit court properly exercises its

discretion when it has examined the relevant facts, applied the proper legal standards, and engaged in a rational decision-making process." *State v. Bentley*, 201 Wis. 2d 303, 318, 548 N.W.2d 50 (1996). "[W]e generally look for reasons to sustain discretionary decisions." *Burkes v. Hales*, 165 Wis. 2d 585, 591, 478 N.W.2d 37 (Ct. App. 1991) (citation omitted).

¶16 Ramos concedes that he was not entitled to a hearing on his postconviction motion because it was "poorly pled and conclusory." Instead, he argues that the circuit court erroneously exercised its discretion when it rejected his ineffective assistance of counsel claim because it engaged in "erroneous factual finding, ignored all but the broadest governing legal standards, and engaged in a decision making process which is entirely tautological." We disagree and conclude that the circuit court properly exercised its discretion when it denied Ramos' motion.

¶17 "Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant is guaranteed the right to effective assistance of counsel." *State v. Balliette*, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334. The defendant must establish two elements to demonstrate that he received ineffective assistance of counsel: (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶18 "Whether counsel was ineffective is a mixed question of fact and law." *Balliette*, 336 Wis. 2d 358, ¶19. We will not disturb the circuit court's factual findings unless they are clearly erroneous and we independently review the legal question of whether there was ineffective assistance of counsel. *Id.*

¶19 First, Ramos argues that the circuit court erred when it found that Ramos failed to show that trial counsel's conduct was deficient due to reasonableness not being an issue in this case because the jury was instructed to consider whether the defendant's beliefs were reasonable. Ramos misconstrues the court's reasoning. The court explained why it agreed with the State that Ramos' testimony at trial provided "no support" for trial counsel to present a defense that Ramos' beliefs and conduct were unreasonable before it stated:

> The defendant's claim that the facts of this case might have allowed for an imperfect self-defense instruction is not enough to demonstrate that counsel's decision not to request one was objectively unreasonable according to prevailing professional norms, particularly when it was the veracity of the defendant's claims, not the reasonableness of his actions, that was at issue in the trial. *See Strickland*, 466 U.S. at 688[.]
>
> Because the defendant has failed to allege sufficient facts in his motion to raise a question of fact and presents only conclusory allegations regarding deficient performance and prejudice, the court in its exercise of discretion denies the defendant's motion without a hearing.

¶20 In context, it is clear that the circuit court was emphasizing that credibility—specifically whether the jury believed Ramos' or Reeber's version of events—was more of an issue than the reasonableness of Ramos' beliefs and conduct at trial. The court ultimately found that Ramos failed to demonstrate that his trial counsel's conduct was deficient because merely claiming that the evidence would have been sufficient for the circuit court to give an imperfect self-defense instruction does not satisfy Ramos' burden under *Strickland*. In order to show that counsel's performance was deficient, a defendant must do more than assert that "counsel was imperfect or less than ideal." *Balliette*, 336 Wis. 2d 358, ¶22. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. Ramos

did not develop such an argument in his postconviction motion and therefore the circuit court did not err.

¶21 Ramos also argues the circuit court erred by relying on the holding in *Strickland*—that the proper measure of attorney performance is reasonableness under prevailing professional norms, *see id.* at 688—instead of citing to case law that specifically discusses what performance is reasonable under prevailing norms. We disagree.

¶22 Ramos did not argue that his trial counsel's performance violated any professional norms or any objective standard of reasonableness. Instead, Ramos stated that the area of self-defense law is "well settled"; therefore, trial counsel was deficient for failing to ask for an imperfect self-defense instruction. However, Ramos did not identify any evidence in the record to support that his beliefs were unreasonable or that unnecessary defensive force was used to warrant an imperfect self defense instruction. *See Head*, 255 Wis. 2d 194, ¶5. Indeed, when denying the postconviction motion, the circuit court agreed with the State that there is only support for a claim that Ramos' beliefs and actions were reasonable under the alleged circumstances. The burden was on Ramos, not the court, to allege sufficient facts and law to support a claim that his trial counsel's performance fell below an objective standard of reasonableness.

¶23 Similarly, Ramos also argues the circuit court's finding that there are no facts alleged in the postconviction motion "which would support the conclusion the verdict of the trial would be different had trial counsel requested an imperfect self-defense instruction," was clearly erroneous.

¶24 A postconviction motion "must include facts that allow the reviewing court to meaningfully assess the defendant's claim." *Allen*, 274

9

Wis. 2d 568, ¶21 (citation modified). In order to prove prejudice, "[i]t is not sufficient for the defendant to show that his [or her] counsel's errors 'had some conceivable effect on the outcome of the proceeding.'" *State v. Carter*, 2010 WI 40, ¶37, 324 Wis. 2d 640, 782 N.W.2d 695 (citation omitted). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. 668, 694.

¶25 Ramos speculated that "[t]he jury could have concluded" that Ramos' beliefs were "unreasonable," without alleging facts that could support such a finding. The burden was on Ramos to point to facts and law that could support that trial counsel's alleged error had an adverse effect on his defense. *See Balliette*, 336 Wis. 2d 358, ¶24 ("The defendant may not presume the second element, prejudice to the defense[.]"); *State v. Erickson*, 227 Wis. 2d 758, 774, 596 N.W.2d 749 (1999) (stating that a defendant must "offer more than rank speculation to satisfy the prejudice prong").

¶26 On appeal, Ramos points to the actual instructions given to the jury as the critical fact in the postconviction motion that the circuit court ignored. Ramos characterizes the jury instructions as inaccurate and missing elements because the jury was instructed to consider the reasonableness of Ramos' beliefs when determining whether he was guilty of first-degree intentional homicide without also including the imperfect self-defense and second-degree intentional homicide instructions. Ramos then reasons that the jury instructions were erroneous in the same way as those in *State v. Austin*, in which this court remanded for a new trial when the self-defense jury instruction failed to mention that it was the State's burden to show that the defendant engaged in criminally

reckless conduct. *See id.*, 2013 WI App 96, ¶¶10, 17, 23, 349 Wis. 2d 744, 836 N.W.2d 833. We disagree.

¶27 Unlike in *Austin*, in which the instructions given to the jury implicitly shifted the burden from the State to the defendant, *see id.*, ¶¶17-19, the jury instructions here accurately reflected the law. The reasonableness of the defendant's beliefs is relevant when perfect self-defense to first-degree intentional homicide is at issue. *Head*, 255 Wis. 2d 194, ¶70 ("If perfect self-defense is placed in issue by the trial evidence, the [S]tate must prove beyond a reasonable doubt that one of the defendant's beliefs was not *reasonable*." (Emphasis added.)); WIS. STAT. § 939.48(1). Therefore, the jury instructions were not inaccurate for reflecting that.[4] Thus, we conclude the circuit court did not erroneously exercise its discretion by denying his motion without a hearing. *See Allen*, 274 Wis. 2d 568, ¶34.

## II. Discretionary reversal is not warranted.

¶28 Finally, Ramos argues that he is entitled to a new trial under WIS. STAT. § 752.35.

---

[4] Although not mentioned in Ramos' postconviction motion, on appeal he also points to the ambiguity in the evidence regarding the number of times Ramos shot Reid to support that the jury instructions were inaccurate for failing to include an imperfect self-defense instruction because the jury could have believed that Ramos used unnecessary defensive force to fend off Reid. However, we review "only the allegations contained in the four corners of [the defendant's] postconviction motion, and not any additional allegations that are contained in [the defendant's] brief." *State v. Allen*, 2004 WI 106, ¶27, 274 Wis. 2d 568, 682 N.W.2d 433. Furthermore, we note that the existence of some evidence that may have permitted Ramos to meet the low threshold to request an imperfect self-defense jury instruction does not by itself meet his burden under *Strickland* of demonstrating that his trial counsel's failure to request the instruction was deficient and resulted in prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶29 Our power to grant a new trial in the interest of justice under WIS. STAT. § 752.35 is a discretionary reversal power that "should be exercised sparingly and with great caution." *State v. Williams*, 2006 WI App 212, ¶36, 296 Wis. 2d 834, 723 N.W.2d 719. Only in "exceptional cases" will we grant a new trial in the interest of justice. *State v. Kucharski*, 2015 WI 64, ¶23, 363 Wis. 2d 658, 866 N.W.2d 697. We independently determine whether to grant a new trial in the interest of justice. *Williams*, 296 Wis. 2d 834, ¶12.

¶30 Ramos puts forth the same argument discussed above that the jury instructions were inaccurate for failing to include an imperfect self-defense instruction and as a result a new trial is necessary in the interests of justice like in *Austin*. As we explained, the jury instructions were accurate.[5] Thus, we are not persuaded this is an exceptional case that warrants discretionary reversal. *See Allen*, 274 Wis. 2d 568, ¶35.

## CONCLUSION

¶31 We conclude that the circuit court properly exercised its discretion when it denied Ramos' postconviction motion without a hearing. We also conclude that this is not an exceptional case that warrants discretionary reversal pursuant to WIS. STAT. § 752.35.

*By the Court.*—Judgment and order affirmed.

---

[5] To the extent that Ramos also argues that in all cases where perfect self-defense is at issue, the jury must also be instructed on imperfect self-defense and that the failure to do so requires discretionary reversal, we note that Ramos has not supported such an argument with sufficient reasoning and citations to legal authority. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.