COURT OF APPEALS
DECISION
DATED AND FILED

February 11, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP2256-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF514

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MARTICE T. FULLER,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Kenosha County: MARY KAY WAGNER and BRUCE E. SCHROEDER, Judges. *Affirmed*.

Before Neubauer, P.J., Grogan, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in Wis. Stat. Rule 809.23(3).**

¶1 PER CURIAM. Martice T. Fuller appeals from a judgment of conviction and order denying postconviction relief. For the following reasons, we affirm.

## BACKGROUND

¶2 In May 2019, law enforcement officers were dispatched to the location of a shooting where they found Sheila and her 15-year-old daughter Kathy,[1] both of whom had gunshot wounds. Sheila told the officers that, when she heard her daughter scream and then a shot, she rushed to her daughter's room only to be stopped at the doorway by 15-year-old Fuller, who was pointing a gun at Sheila. They exchanged a few words, and Fuller shot Sheila in her chest and arm. Sheila retreated to another room, locked the door, and called 911. On the call, she identified the shooter as Fuller. Kathy died from four gunshot wounds to her chest and head. Sheila survived and ultimately testified at Fuller's trial.

¶3 After the shooting, Fuller went to his cousin's house, who later learned that Fuller's house had been raided the following morning. Fuller's cousin contacted law enforcement and indicated that Fuller wished to turn himself in; he was then taken into custody. Another of Fuller's cousins testified at trial that after the shooting, Fuller handed him a gun in a black bag. Fuller's cousin threw the bag in the sewer. A few days later, the cousin took law enforcement to the sewer drain where they recovered the gun, a Makarov.

---

[1] Consistent with the policy in WIS. STAT. RULE 809.19(1)(g) (2023-24), the victims are identified by pseudonyms. All references to the Wisconsin Statutes are to the 2023-24 version.

¶4     Fuller was charged with first-degree intentional homicide with use of a dangerous weapon, attempted first-degree intentional homicide with use of a dangerous weapon, and armed burglary.  He was charged as an adult pursuant to WIS. STAT. § 938.183(1)(am).

¶5     A jury trial commenced in March 2021.  After the jury was seated, without objection, the trial court[2] recessed for lunch.  One juror, Owens,[3] reported to the bailiff that he was unsure if he could be impartial, and the bailiff relayed this to the court.  After it dismissed the jury, the court questioned Owens, who expressed equivocation as to his ability to be impartial because of the State's comments during voir dire about what they intended to present at trial.  The court instructed Owens that the job of the jury is to base its decision on the evidence, which had not yet been presented, and instructions on the law.  The court asked Owens if he understood, and Owens replied that he did.  When asked why he thought he could not be fair, Owens replied, "I just don't feel like I can [be fair], like I can be fully unbiased," and that he "would be leaning more towards guilty than not guilty."

¶6     Next, the State questioned Owens and explained that opening arguments are not evidence.  Owens agreed that if the State presented the evidence and proved it beyond a reasonable doubt, he would likely vote guilty.  Owens recognized that no evidence had been presented yet, and admitted that he had not yet decided if Fuller was guilty or not.  The trial court explained that the State was

_____

[2] The Honorable Mary Kay Wagner, referred to herein as the "trial court," presided over trial and entered the judgment of conviction.  The Honorable Bruce E. Schroeder, referred to herein as the "circuit court," entered the order denying the defendant's postconviction motion.

[3] Owens is a pseudonym.

obliged to prove the case through evidence, and that questions posed during voir dire and closing arguments are not evidence. Owens told the court he could be fair.

¶7    Defense counsel also questioned Owens and explained the presumption of innocence. In response, Owens agreed that Fuller did have the presumption of innocence at the outset of the trial. Owens explained that he had misunderstood counsel's statements at voir dire, but that he now understood his duty was to decide based on the evidence presented at trial. He admitted that he "was trying to process" what was said during voir dire, and he said he did "not want[] to be biased either one way or the other." He said, "I don't want to go in with a preconceived notion." Owens said he understood that at the time of voir dire, the State had not proven anything. Owens remained on the jury without any objections.

¶8    The State planned to introduce evidence at trial from a state crime lab expert on firearms and toolmarks. Fuller sought a ***Daubert***[4] hearing seeking to exclude admission of any expert opinion or testimony until the trial court had qualified the witness as an expert and the State had shown the expert testimony reliable. The court denied Fuller's motion without a ***Daubert*** hearing, stating it would give Fuller "wide latitude in [his] cross-examination of the witness as to how they came to their conclusions and why." At trial, the firearms and toolmarks expert testified that all seven casings and seven bullets she examined that were discovered at the scene or retrieved from Kathy's gunshot wounds, were fired from the Makarov firearm that was retrieved by law enforcement.

---

[4] ***Daubert v. Merrell Dow Pharms., Inc.***, 509 U.S. 579 (1993).

¶9    Sheila and Fuller's cousins testified at trial. Other witnesses testified about Fuller acquiring a gun and ammunition to kill Kathy and his admission to the shootings.

¶10   The jury found Fuller guilty of all three charged counts. In sentencing Fuller, the trial court said,

> It was unfathomable for all of us to think that a boy 15 years old could plot and plan ruthlessly to kill [Kathy] and her mother. …
>
> ….
>
> [The jury] saw the plan, the calculating moves that [Fuller] made to carry out [his] hatred and [his] vengeance, the efforts to cover up [his] heinous act. …
>
> ….
>
> Much time has passed and now you're 18, and what have you done since then? You attempted to tamper with my jury.[5] You gathered other inmates to brutalize other inmates.[6] … [Fuller] ha[s] not shown any attempts to acknowledge [he was] wrong or express remorse in [his] actions.
>
> ….
>
> These crimes were not the impulsive acts of an undeveloped child. These acts were performed deliberately and with much thought and planning.

¶11   The trial court found Fuller to be "a very dangerous and a damaged human being." The court did not trust that Fuller would refrain from committing

---

[5] Fuller was convicted of one count of jury tampering in which he asked his mother to "look further into one of the jurors that was picked on his first jury." A jury had been selected in February 2020, but that trial was continued because of the jury tampering allegation. The second jury at issue in this appeal was selected in March 2021.

[6] While awaiting trial, Fuller engaged in multiple incidents of violence in jail.

violent acts because of his "continued violent behavior in the jail." The court stated that it hoped Fuller could "right [him]self in [his] life … but it won't be among the community. It was all too calculated." The court sentenced Fuller "in the interest of protecting the public [and] acknowledging the seriousness of these acts" to: a life sentence with no eligibility for extended supervision for Kathy's murder; a consecutive 21-year sentence for attempting Sheila's murder; and an 8-year sentence for armed burglary, concurrent to the sentence for attempted murder.

¶12 Fuller moved for postconviction relief, requesting a new trial, or, in the alternative, resentencing. He argued that he was entitled to a new trial "on the basis that plain error affected [his] substantial right to a fair trial by an impartial jury when the trial court did not remove a juror who had pre-formed an opinion regarding his guilt." Fuller also argued that he received ineffective assistance of counsel when counsel failed to strike this juror. He claimed these errors violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution. He requested that the circuit court grant him a hearing on his ineffective assistance of counsel claim. In the alternative, Fuller argued that he was entitled to resentencing because the trial court erroneously exercised its discretion and relied on inaccurate information. Specifically, Fuller argued that the court should not have treated his youth "as an aggravating factor" and that it relied on inaccurate information about Fuller's mental health.

¶13 The circuit court denied Fuller's motion without a hearing. It determined that "[t]he record does not justify either the claims against [the trial court] and the defendant's attorney or the relief requested." Regarding his sentencing claims, the court determined that Fuller "seriously misstates [the trial court's] comments and conclusions at sentenc[ing.]" Rather, "[t]he judge was

6

fully aware of [Fuller's] mental and emotional background and ultimately concluded that the sentence imposed was the correct one, a decision which [the trial court] was in the best position to make."

## DISCUSSION

¶14 Fuller claims that: (1) the trial court committed plain error when it did not *sua sponte* remove the prospective juror for subjective bias; (2) the court erroneously exercised its discretion when it denied Fuller's motion to exclude or limit testimony from the State's firearms expert; (3) he is entitled to resentencing on his claim that the court erroneously exercised its discretion when it failed to consider his youth as a mitigating factor; (4) he is entitled to resentencing on his claim that the court relied on inaccurate information regarding his mental health; and (5) the circuit court erred in denying him an evidentiary hearing on his claim that his trial counsel provided ineffective assistance when he failed to move to strike the prospective juror. We address each claim below.

## I. The trial court did not commit error by seating the juror.

¶15 Fuller contends that the trial court committed plain error when it seated a juror who demonstrated subjective bias. He argues the court's failure in this regard violated his constitutional right to a fair and impartial jury. We disagree.

¶16 Fuller forfeited this argument by failing to object to the juror he claims was subjectively biased, Owens, during voir dire. "[A] defendant may forfeit a right if [he] fails to object at the time the right is violated." *State v. Coffee*, 2020 WI 1, ¶19, 389 Wis. 2d 627, 937 N.W.2d 579. A claim that a juror should be struck for cause is forfeited if not presented to the trial court at the time

of jury selection. *State v. Brunette*, 220 Wis. 2d 431, 440, 583 N.W.2d 174 (Ct. App. 1998); *State v. Williams*, 2000 WI App 123, ¶19, 237 Wis. 2d 591, 614 N.W.2d 11 (rejecting "the notion that a party who during voir dire neither requests further questioning nor objects to the seating of a juror may later allege error in the trial court's failure to act *sua sponte*").

¶17     Fuller also seeks review of his counsel's failure to object under the plain error doctrine. This argument also fails because Fuller did not prove that the juror was subjectively biased.

¶18     "Under the doctrine of plain error, an appellate court may review error that was otherwise waived by a party's failure to object properly or preserve the error for review as a matter of right." *State v. Mayo*, 2007 WI 78, ¶29, 301 Wis. 2d 642, 734 N.W.2d 115). A plain error is one that is "so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time." *State v. Jorgensen*, 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77. The error must be "obvious and substantial," and courts should use the doctrine sparingly. *Id.* (citation omitted). The plain error doctrine allows reversal of a conviction only if an obvious and substantial error deprived a defendant of a basic constitutional right. *State v. Frank*, 2002 WI App 31, ¶25, 250 Wis. 2d 95, 640 N.W.2d 198. This court independently determines whether an alleged due process violation was plain error. *State v. Bell*, 2018 WI 28, ¶8, 380 Wis. 2d 616, 909 N.W.2d 750.

¶19     "[T]he trial court ultimately bears the responsibility for ensuring that a fair and impartial jury is impaneled." *Williams*, 237 Wis. 2d 591, ¶19. "To be impartial, a juror must be indifferent and capable of basing his or her verdict upon the evidence developed at trial." *State v. Faucher*, 227 Wis. 2d 700, 715, 596

N.W.2d 770 (1999). "[Trial] courts are obligated to remove for cause only those jurors who are indeed biased." ***State v. Kiernan***, 227 Wis. 2d 736, 749 n.9, 596 N.W.2d 760 (1999).

¶20 Deciding whether a prospective juror is biased and should be struck is a matter of trial court discretion. ***State v. Gesch***, 167 Wis. 2d 660, 666, 482 N.W.2d 99 (1992). This is because the court is best situated to make this determination. ***State v. Erickson***, 227 Wis. 2d 758, 775-77, 596 N.W.2d 749 (1999). We review claims of juror bias by "uphold[ing] the [trial] court's factual finding that a prospective juror is or is not … biased unless it is clearly erroneous." ***State v. Lepsch***, 2017 WI 27, ¶23, 374 Wis. 2d 98, 892 N.W.2d 682. "Reviewing courts are properly resistant to second-guessing the trial judge's estimation of a juror's impartiality, for that judge's appraisal is ordinarily influenced by a host of factors impossible to capture fully in the record—among them, the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty." ***Id.***, ¶22 (citation omitted).

¶21 "'Prospective jurors are presumed impartial' and [the defendant] 'bears the burden of rebutting this presumption and proving bias.'" ***Id.*** (citation omitted). There are three types of bias for which a trial court may excuse a juror: statutory, subjective, and objective. ***Id.*** Subjective bias is at issue here: it "refers to 'bias that is revealed through the words and the demeanor of the prospective juror.'" ***Id.***, ¶23 (citation omitted). "A prospective juror is subjectively biased if the record reflects that the juror is not a reasonable person who is sincerely willing to set aside any opinion or prior knowledge that the prospective juror might have." ***State v. Oswald***, 2000 WI App 2, ¶19, 232 Wis. 2d 62, 606 N.W.2d 207. "[T]he [trial] court sits in a superior position to assess the demeanor and disposition of

prospective jurors, and thus, whether they are subjectively biased." *Lepsch*, 374 Wis. 2d 98, ¶23 (first alteration in original; citation omitted).

¶22    To prove his impartiality, "a prospective juror need not respond to voir dire questions with unequivocal declarations of impartiality." *Erickson*, 227 Wis. 2d at 776.  In fact, our supreme court has noted that it "fully expect[s] a juror's honest answers at times to be less than unequivocal." *Id.*  We recognize "that a prospective juror may honestly equivocate in response to voir dire questions exploring their fears, biases, and predilections." *State v. Gutierrez*, 2020 WI 52, ¶41, 391 Wis. 2d 799, 943 N.W.2d 870.  There is no specific test for determining whether a juror is subjectively biased. *Lepsch*, 374 Wis. 2d 98, ¶36. "[A trial] court need not use or obtain any magic words in determining whether this requirement has been met." *Id.*

¶23    Fuller argues that Owens made repeated remarks demonstrating his prejudice, which warranted his excusal.  These included statements such as, "I just don't feel like I can [be fair], like I can be fully unbiased," and that he "would be leaning more towards guilty than not guilty."  But the determination of Fuller's impartiality is not dependent on whether he "respond[ed] to voir dire questions with unequivocal declarations of impartiality." *Erickson*, 227 Wis. 2d at 776. These statements and others were made while Owens was exploring his role as a juror in response to numerous inquiries after it was brought to the trial court's attention that Owens was equivocating.  During questioning, Owens "honestly equivocate[d] … exploring [his] fears, biases, and predilections." *Gutierrez*, 391 Wis. 2d 799, ¶41.  For example, he said, "I don't want to go in with a preconceived notion."  He equivocated because he heard during voir dire what the State intended to prove, and he felt that if the State made its case, he would find Fuller guilty.  He shared his equivocation with the court because he did "not

want[] to be biased either one way or the other." The court and counsel teased out for Owens the purpose of voir dire questions, opening statements, and closing arguments, and explained that none of these were evidence. Owens indicated his understanding and ultimately admitted that he thought he could be fair. He agreed that he could base his verdict on the evidence developed at trial and that nothing had been proven yet. During the exchange, Owens demonstrated his impartiality. The court was satisfied.

¶24 Fuller does not meet his burden of rebutting the presumption of Owens's impartiality, and thus he fails to demonstrate that an obvious and substantial error resulted from the trial court's failure to dismiss Owens. Because Fuller fails to prove Owens was biased, this was not a reason to which his counsel should have objected, and thus, there was no plain error. Moreover, the court did not clearly err by finding the juror to be impartial, nor did it err by not excusing, *sua sponte*, Owens from the jury.

## II. The trial court reasonably exercised its discretion in denying Fuller's *Daubert* challenge.

¶25 Fuller also claims that the trial court erred when it denied Fuller's motion to exclude or limit testimony by the State's firearms and toolmarks expert. We disagree.

¶26 A trial court has substantial discretion in deciding whether to admit expert testimony. *State v. Jones*, 2018 WI 44, ¶33, 381 Wis. 2d 284, 911 N.W.2d 97. We review the admission of expert testimony by determining "whether 'the trial court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record.'" *National Auto Truckstops, Inc. v. DOT*, 2003 WI 95, ¶12, 263 Wis. 2d 649, 665 N.W.2d 198 (citation omitted).

¶27 "Expert testimony … is required only if the issue to be decided by the trier of fact is beyond the general knowledge and experience of the average juror." *State v. Owen*, 202 Wis. 2d 620, 632, 551 N.W.2d 50 (Ct. App. 1996). Whether such testimony "is properly received depends upon whether the members of the jury, having the knowledge and general experience common to every member of the community, would be aided in consideration of the issues by the testimony offered." *State v. Friedrich*, 135 Wis. 2d 1, 15, 398 N.W.2d 763 (1987).

¶28 WISCONSIN STAT. § 907.02(1) provides the standard for admitting expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the testimony is based upon sufficient facts or data, the testimony is the *product of reliable principles and methods*, and the witness has applied the principles and methods reliably to the facts of the case.

(Emphasis added.) The statute incorporates the federal standard set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Jones*, 381 Wis. 2d 284, ¶7. Under *Daubert*, the proffered expert evidence or testimony must "*assist the trier of fact* to understand the evidence or to determine a fact in issue[.]" *Daubert*, 509 U.S. at 589. "Instead of exclusion, the appropriate means of attacking 'shaky but admissible' … expert testimony is by '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof[.]'" *Seifert v. Balink*, 2017 WI 2, ¶86, 372 Wis. 2d 525, 888 N.W.2d 816 (Abrahamson, J., lead opinion) (second alteration added) (quoting *Daubert*, 509 U.S. at 597).

¶29    As the gatekeeper for admitting evidence, the trial court must "ensure that the expert's opinion is based on a reliable foundation and is relevant to the material issues." *State v. Giese*, 2014 WI App 92, ¶18, 356 Wis. 2d 796, 854 N.W.2d 687.  The court concentrates on the principles and methodology used by the expert, not the conclusion.  *Id.*  "The goal is to prevent the jury from hearing conjecture dressed up in the guise of expert opinion." *Id.*, ¶19.

¶30    Harmless-error analysis applies to the erroneous admission of evidence, *Jorgensen*, 310 Wis. 2d 138, ¶22: such an error is harmless "if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'"  *State v. Harvey*, 2002 WI 93, ¶49, 254 Wis. 2d 442, 647 N.W.2d 189 (citation omitted).

¶31    Fuller argues that "[t]he [trial] court ignored arguments and information provided by [Fuller] regarding the growing skepticism toward firearm and toolmark examination within the forensic science community and legal system."  Fuller's argument fails.  There is no evidence that the court ignored Fuller's arguments, only that it disagreed with them.  Fuller submitted a memorandum opinion from the District of Columbia that has no precedential value in Wisconsin courts.  He argued that toolmark examination does not have "an accepted methodology" and that "testimony of an examiner saying that one thing matches another ... oversells the certainty that can be achieved through toolmark examination based upon that definition of significant agreement."  Fuller cites no authority from Wisconsin to support his argument, that it is improper for a ballistics expert to match a firearm to a casing.

¶32     The State provided the trial court with documents that demonstrated its expert evidence met the ***Daubert*** criteria,[7] showing it employed "methodology that is regularly tested and can be tested[,]" that "there's peer review and a qualification process for …examiners[,]" and "[t]hey're able to demonstrate their error rate."

¶33     Upon hearing both parties' arguments, the trial court decided to deny Fuller's motion without a hearing.  It determined that

> it's well established that this is a process based in science, based in accepted principles.  There's a theory involving toolmarks on casings and matching up to weapons that has been tested. … [T]here is peer review of this over the years.
>
>    … [T]hey have a known or potential rate of error as I understand it.  There are standards that control the technician's operation and assessment of the evidence[,] and it's generally accepted as a theory.

The court told Fuller that it would give him "wide latitude" in cross-examining the expert witness and how she "came to [her] conclusions and why."

¶34     The Record shows that defense counsel thoroughly cross-examined the expert on the theory of matching casings to firearms.  In addition, jurors were

---

[7] The ***Daubert*** criteria provide guidance for the trial court's assessment of reliability, or scientific validity, of the methodology underlying expert evidence.  ***Seifert v. Balink***, 2017 WI 2, ¶¶61-62, 372 Wis. 2d 525, 888 N.W.2d 816.

> [T]he ***Daubert*** court provided a nonexhaustive list of factors that make scientific evidence sufficiently reliable for admission: "(1) whether the methodology can and has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the known or potential rate of error of the methodology; and (4) whether the technique has been generally accepted in the scientific community."

***Seifert***, 372 Wis. 2d 525, ¶62 (footnote and citation omitted).

instructed that they were "not bound by" an expert's opinion, and that they "are the sole judges of the facts, and the [c]ourt is the judge of the law only."

¶35     Fuller next argues that any error in not limiting or excluding the expert testimony was not harmless because "[t]he jury was told that the bullets and casings recovered from the scene 'matched' the firearm police recovered[.]" Fuller argues that without this testimony, which he believes was inadmissible, "the evidence connecting the firearm to the scene was questionable."

¶36     That argument is belied by the other evidence presented at trial. Fuller's gun was found exactly where Fuller's cousin testified he disposed of it. Sheila testified that she saw and spoke to Fuller, and Fuller pointed the gun at her and shot her twice; Sheila also identified Fuller as the shooter in her call to 911; and witnesses testified about Fuller acquiring a gun and ammunition to kill Kathy as well as his admission to the shootings. We conclude that the expert testimony was properly admitted, and if error occurred, it was harmless.

### III.  The trial court did not err when sentencing Fuller.

¶37     Fuller argues that he is entitled to resentencing because the trial court erroneously exercised its discretion by "failing to consider his youth and its attending circumstances as mitigating factors … as required under the Eighth Amendment and *Miller v. Alabama*, 567 U.S. 460 (2012)[.]" He argues that under *Miller*, the court was required to treat his youth as a mitigating factor.[8]     His

---

[8] While Fuller characterizes the trial court's sentencing decision as having considered age as an "aggravating factor," we disagree.  As explained, *infra*, the court considered Fuller's age but decided his age did not mitigate his sentence.

15

argument is misplaced because *Miller* is inapplicable. *Miller* involved mandatory sentencing,[9] whereas Fuller's sentencing did not.

¶38 When sentencing a defendant to life imprisonment, WIS. STAT. § 973.014 allows a trial court to exercise its discretion in making an extended supervision eligibility determination, which includes the option that the defendant is not eligible for extended supervision. Sec. 973.014(1), (1g)(a)3. We recognized the following principle from *Miller*: "what the United States Supreme Court in *Miller* found unconstitutional was a statutory scheme that *mandates* a punishment of life imprisonment without the possibility of parole for a juvenile convicted of intentional homicide." *State v. Barbeau*, 2016 WI App 51, ¶33, 370 Wis. 2d 736, 883 N.W.2d 520 (emphasis added).[10]

---

[9] In *Miller*, the Supreme Court held that a mandatory life sentence imposed on a juvenile offender violates the Eighth Amendment because it prevents the sentencing court from accounting for youth-related considerations in assessing whether the punishment is proportionate. *Miller v. Alabama*, 567 U.S. 460, 474-75 (2012). The Supreme Court did not foreclose life without the possibility of parole for all juvenile offenders but required sentencing courts "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480.

[10] While the sentence in *Barbeau* differed from that facing Fuller, the *Barbeau* court chose to decide the defendant's constitutional challenge to a sentence of life imprisonment without the possibility of obtaining supervised release for a juvenile convicted of first-degree intentional homicide, because our "supreme court rejected a similar, but slightly different, categorical challenge to the application of the sentencing scheme for first-degree intentional homicide to juvenile offenders in [*State v.*] *Ninham*[, 2011 WI 33, 333 Wis. 2d 335, 797 N.W.2d 451]." *State v. Barbeau*, 2016 WI App 51, ¶¶24, 25, 370 Wis. 2d 736, 883 N.W.2d 520. The *Ninham* court held "that sentencing a 14-year-old to life imprisonment without the possibility of parole for committing [first-degree] intentional homicide is not categorically unconstitutional." *Ninham*, 333 Wis. 2d 335, ¶¶23, 83. The *Barbeau* court said:

(continued)

¶39 "WISCONSIN STAT. § 973.014(1g)(a) does not mandate life imprisonment without the possibility of release to extended supervision, but gives the [trial] court the discretion to impose such a sentence[.]" *Barbeau*, 370 Wis. 2d 736, ¶33. We have determined that "it is not unconstitutional to sentence a juvenile to life imprisonment without the possibility of supervised release for intentional homicide if the circumstances warrant it." *Id.*, ¶32. Thus, *Miller* is inapplicable here.

¶40 "[A trial] court exercises discretion at sentencing[, and appellate] review is limited to determining if discretion was erroneously exercised." *State v. Gallion,* 2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197. The court's reasoning must be supported by "facts [that] are fairly inferable from the record." *McCleary v. State*, 49 Wis. 2d 263, 281, 182 N.W.2d 512 (1971). Courts must consider three factors in imposing a sentence: the need to protect the public, the rehabilitative needs of the defendant, and the gravity of the offense. *Gallion*, 270 Wis. 2d 535, ¶44. The weight to be given to each of the factors is a determination within the court's discretion. *Ocanas v. State*, 70 Wis. 2d 179, 185, 233 N.W.2d

Although *Miller* was decided after *Ninham*, nothing in *Miller* undercuts our supreme court's holding in *Ninham*. Indeed, in *Miller*, the United States Supreme Court did "not consider [the] alternative argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles, or at least for those 14 and younger." The [C]ourt did not "foreclose a sentencer's ability to [sentence a juvenile to life without the possibility of parole] in homicide cases," but required sentencing courts "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Thus, it is not unconstitutional to sentence a juvenile to life imprisonment without the possibility of supervised release for intentional homicide if the circumstances warrant it.

*Barbeau*, 370 Wis. 2d 736, ¶32 (second alteration added; citations omitted).

17

457 (1975). A court has "the discretion to mete out a punishment, taking into account [a defendant's] youth, in deciding when, if ever, he should be eligible for supervised release." **Barbeau**, 370 Wis. 2d 736, ¶41. However, "the youth factor does not automatically outweigh all of the other sentencing factors." **State v. Davis**, 2005 WI App 98, ¶19, 281 Wis. 2d 118, 698 N.W.2d 823. While **Davis** was decided before **Miller**, it is still applicable, and nothing requires a court to impose a more lenient sentence for a 15-year-old defendant than one who is 18 years old or older. *See* WIS. STAT. § 973.014(1g)(a).

¶41 The Record shows that the trial court did not erroneously exercise its discretion in sentencing Fuller. The court recognized that Fuller was 15 years old when he committed his crimes. Yet, in sentencing Fuller, the court assigned the most weight to the gravity of Fuller's offenses and the need to protect the public. As to the gravity of the offenses, the court explained that the jury "saw the plan, the calculating moves that [Fuller] made to carry out [his] hatred and [his] vengeance, [and] the efforts made to cover up [his] heinous act." The court noted that Fuller's crimes "were not the impulsive acts of an undeveloped child. These acts were performed deliberatively and with much thought and planning." As to protecting the public, the court found Fuller to be "a very dangerous and a damaged human being[,]" and it did not trust that Fuller would not commit similar acts again, as he continued to exhibit violent behavior in jail. The court sentenced Fuller to life without eligibility for extended supervision "in the interest of protecting the public, acknowledging the seriousness of these acts[.]" While the court was aware of Fuller's age at the time of his crime, "the youth factor did not operate to significantly mitigate the appropriate sentence." *See* **Davis**, 281 Wis. 2d 118, ¶17. The court found that "circumstances warrant[ed]" the sentence

it imposed. *See Barbeau*, 370 Wis. 2d 736, ¶32. That decision was not clearly erroneous.

## IV. The trial court did not rely on inaccurate information when sentencing Fuller.

¶42 A defendant has a due process right to be sentenced on the basis of accurate information. *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. "A defendant who requests resentencing due to the [trial] court's use of inaccurate information at the sentencing hearing 'must show both that the information was inaccurate and that the court actually relied on the inaccurate information in the sentencing.'" *Id.*, ¶21 (citation omitted). Information is inaccurate when it is "extensively and materially false[.]" *Id.*, ¶10 (citation omitted). In considering a sentencing challenge based on inaccurate information, we review the entire sentencing transcript to determine whether the court gave explicit attention to inaccurate information and whether the information "formed part of the basis for the sentence[.]" *State v. Alexander*, 2015 WI 6, ¶30, 360 Wis. 2d 292, 858 N.W.2d 662 (citation omitted). If a defendant shows actual reliance on inaccurate information, the burden shifts to the State to prove harmless error. *Tiepelman*, 291 Wis. 2d 179, ¶26. We independently review whether a court relied on inaccurate information in sentencing a defendant. *Id.*, ¶9. Whether the court's reliance on inaccurate information is harmless is a question of law that we review de novo. *Coffee*, 389 Wis. 2d 627, ¶17.

¶43 The circuit court rejected Fuller's argument and determined that the trial court "was fully aware of [Fuller's] mental and emotional background and ultimately concluded that the sentence imposed was the correct one, a decision which [the trial court] was in the best position to make." On appeal, Fuller argues that the circuit court did not account for witness testimony on Fuller's suicidal

nature or the Presentence Investigation (PSI) report that described reports of Fuller's suicidal messages and social media posts in March 2019. He also points to a psychologist's testimony while Fuller awaited trial during his reverse waiver hearing.[11] The psychologist diagnosed Fuller with depression.

¶44 The trial court noted that Fuller did not have a history of mental illness. In sentencing Fuller, the court said

> You do not stand before this [c]ourt with a damaged childhood. You don't have a history of mental illness. You're intelligent. You were socially developed. You were athletically gifted. You have no prior record. People believed in you and your talents and your future.

¶45 The Record supports the trial court's conclusion that Fuller did not have a history of mental illness. The psychologist diagnosed Fuller *after* he had been incarcerated. The PSI report stated that law enforcement contacted Fuller about his reported messages and social media posts, and that Fuller's response was "that he had sent the messages out of frustration and sadness due to a recent break up. The defendant denied any plans of suicide." We conclude that the court did not rely on inaccurate information at sentencing in coming to its conclusion that Fuller did not have a history of mental illness.

¶46 The Record demonstrates that the trial court heavily weighed the gravity of Fuller's offense and the need to protect the public, as discussed *supra* in the resolution of whether the court erred in not imposing a lesser sentence considering Fuller's age. Therefore, it is likely that even if the court relied on inaccurate information, the State met its burden of proving the error was harmless,

---

[11] Fuller moved for a reverse waiver to juvenile court. The trial court denied Fuller's motion.

and the court "would have imposed the same sentence absent the error." *See State v. Travis*, 2013 WI 38, ¶73, 347 Wis. 2d 142, 832 N.W.2d 491. We conclude that any error in relying on inaccurate information was harmless.

## V. The circuit court did not err in denying the postconviction motion without a hearing.

¶47 In his postconviction motion, Fuller argued that defense counsel's failure to challenge the juror Owens, for cause, constituted ineffective assistance of counsel, and he requested an evidentiary hearing, which the circuit court denied. Fuller contends this was error.

¶48 In evaluating whether a defendant is entitled to an evidentiary hearing, we independently determine "whether the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief." *State v. Ruffin*, 2022 WI 34, ¶27, 401 Wis. 2d 619, 974 N.W.2d 432. If "the motion alleges sufficient facts, an evidentiary hearing is not mandatory if the motion presents only conclusory allegations or if the record as a whole conclusively demonstrates that the defendant is not entitled to relief." *Id.*, ¶3. "Whether the record conclusively demonstrates that the defendant is entitled to no relief is also a question of law we review independently." *State v. Spencer*, 2022 WI 56, ¶23, 403 Wis. 2d 86, 976 N.W.2d 383 (citation omitted). "If the record conclusively demonstrates the defendant is not entitled to relief, the circuit court has the discretion to decide whether to hold a hearing, which we review for an erroneous exercise of discretion." *Id.*

¶49 A defendant claiming ineffective assistance of counsel must prove both that his lawyer's performance was deficient and, as a result, the defendant suffered prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

21

Whether trial counsel's actions constitute ineffective assistance presents a mixed question of law and fact. *State v. Pitsch*, 124 Wis. 2d 628, 633-34, 369 N.W.2d 711 (1985). Whether trial counsel's performance was deficient, and whether that behavior prejudiced the defense, are questions of law we review de novo. *Id.* at 634.

¶50 In arguing that his counsel was deficient for failing to challenge the juror, Owens, Fuller relies on the premise that Owens was subjectively biased because, before the trial, he expressed that he was leaning towards finding Fuller guilty. As explained above, the Record demonstrates that Owens was impartial: he ultimately stated that he could be fair and that Fuller had the presumption of innocence, that he understood his duty as a juror was to decide guilt or innocence based on what the State was able to prove beyond a reasonable doubt, and that he understood that at the time of voir dire, the State had not proven anything. The trial court, in its discretion, found that Owens was impartial.

¶51 Defense counsel cannot be deficient for failing to strike an impartial juror.[12] In the absence of deficient performance by Fuller's counsel, he cannot be prejudiced by his counsel's actions. The Record conclusively demonstrates that Fuller is not entitled to relief. Thus, we conclude that the circuit court did not erroneously exercise its discretion by not holding an evidentiary hearing on Fuller's ineffective assistance of counsel claim.

---

[12] Fuller argues that two other jurors were removed during voir dire after, similar to Owens, they declared their impartiality, and, therefore, Fuller's counsel should have known that "a motion to strike [Owens] would succeed." The Record indicates that the two other jurors were not equivocating in their declarations of their lack of impartiality, contrary to Owens's statements.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.